UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN SALYERS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY,<br><br>　　　　Defendant. | No. CV 14-7490 PA (JCx)<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW |

Following the filing of the parties' Opening and Responsive Trial Briefs, the submission of their respective Proposed Findings of Fact and Conclusions of Law, and their objections, the Court, conducted a bench trial on July 28, 2015.

Having considered the materials submitted by the parties, including the Administratve Record, and after reviewing the evidence, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a). Any finding of fact that constitutes a conclusion of law is hereby adopted as a conclusion of law, and any conclusion of law that constitutes a finding of fact is hereby adopted as a finding of fact.

## I. Findings of Fact

1. This is an action against Metropolitan Life Insurance Company ("MetLife") for recovery of life insurance benefits under Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, et seq. The Court has jurisdiction of this matter pursuant to 29 U.S.C. §§ 1132(a), (e), (f), and (g), as well as 28 U.S.C. § 1331.

2. Plaintiff Susan Salyers ("Salyers") was a participant in an ERISA-governed employee welfare benefit plan (the "Plan") sponsored by her employer, Providence Health & Services ("Providence"). Providence is not named as a defendant.

3. Salyers' now-deceased husband, Gary Wolk ("Decedent"), was also covered under the Plan.

4. MetLife issued the group policy of life insurance that funded life insurance benefits under the Plan.

5. The Plan provided, among other benefits, supplemental life insurance for eligible employees and their dependents.

6. The Plan specified the eligibility requirements for life insurance coverage over $50,000 for an employee and his or her dependents, stating in the 2013 Summary Plan Description as follows:

> **Spouse/Adult Benefit Recipient Domestic Partner\***
> **Coverage:**
> The Plan offers Spouse/*Adult Benefit Recipient*\* Domestic partner Life Insurance in amounts from $10,000 to $500,000, in $10,000 increments. You may elect coverage equal to 100% of the total amount of your life insurance coverage (Basic plus supplemental) or $500,000, whichever is less. Or, you may choose to waive coverage. Evidence of

>insurability is required for any amount elected over $50,000.

The Plan further explains the enrollment process as follows:

**How the Plan Works**

>Each fall you elect your Dependent Life *benefit options* to be effective for the next calendar year.  During your first enrollment as a newly benefits eligible employee, you may select any amount of spouse/*Adult Benefit Recipient* domestic partner coverage up to $50,000 without evidence of insurability (statement of health).  After the first year, spouse/*Adult Benefits Recipient* domestic partner coverage amounts may be increased by one level per year for coverage levels up to and including $50,000.  No evidence of insurability is required for this increase.  Evidence of insurability is required for any coverage amount above $50,000, or for any benefit increase of more than one benefit level.

7. The 2014 Open Enrollment Guide for the Plan also included an evidence of insurability (statement of health) requirement for Supplemental Dependent Life Insurance over $50,000 and further explained that "any coverage you elect requiring a statement of health will not take effect until approved by MetLife."

8. Salyers completed an Enrollment Benefits Form on or about August 15, 2013, electing supplemental life insurance benefits in the amount of $20,000 for herself and for her now-deceased spouse, Gary Wolk (Decedent).

9. Because Salyers elected only $20,000 in supplemental coverage, per the terms of the Plan, no evidence of insurability (*i.e.*, statement of health) was required.

. . . .

. . . .

-3-

10. Although Salyers elected only $20,000 in supplemental life insurance coverage for herself and Decedent, her employer, Providence, mistakenly entered the amount of coverage as $500,000.

11. Based upon the enrollment error, Providence deducted premiums from Salyers' paycheck for $500,000 in coverage for a 3-month period. Neither Providence or Salyers never brought the error to the attention of MetLife. Salyers also never brought the error to the attention of Providence.

12. During the 2014 open enrollment period, Salyers elected $250,000 in supplemental life insurance coverage for Decedent, but again she did not submit the evidence of insurability required by the Plan for that level of coverage.

13. Decedent died on January 10, 2014, and Salyers submitted a claim for the death benefits dated January 20, 2014.

14. The Employer's Statement submitted with the claim indicated that Decedent had been enrolled in the Plan effective September 1, 2013 as a dependent and that he had $250,000 in supplemental life insurance coverage.

15. Upon receipt of the claim, MetLife confirmed with Providence that there was no statement of health on file for Decedent. It was at this time that Providence discovered the error in the 2013 enrollment.

16. Providence then submitted an updated claim form to MetLife dated February 10, 2014, stating that Decedent had dependent life insurance coverage in the amount of $30,000, which was the maximum amount Decedent was eligible for under the terms of the Plan without evidence of insurability. This amount reflected the 2013 initial enrollment of $20,000 plus the additional $10,000 for which Decedent was eligible in 2014 under the terms of the Plan.

17. MetLife then paid the $30,000 benefit to Salyers, less funeral expenses.

18. MetLife declined to pay the $250,000 in dependent benefits incorrectly entered as a result of Providence's mistake.

19. In a letter dated April 22, 2014, Providence explained:

> Ms. Salyers was provided with the 2013 Providence Summary Plan Description for the Health and Welfare Plan. That included a section relating to Dependent Life Insurance which provides that Evidence of Insurability is required for any amount elected for spouse life insurance over $50,000. This requirement is repeated in the 2014 Life Insurance and Disability Coverage insert to the 2014 open enrollment guide ('booklet'). The booklet also provides that 'any coverage you elect requiring a statement of health will not take effect until approved by MetLife.' Ms. Salyers elected $250,000 for spousal life insurance during the open enrollment period for 2014. It is up to the member to submit the statement of Health to MetLife.  MetLife has advised that Ms. Salyers did not complete a statement of health for her spouse's coverage and therefore the requested $250,000 coverage did not take effect.
>
> The same Evidence of Insurability requirements applied for the 2013 plan. When Ms. Salyers originally enrolled for spousal life insurance coverage in August 2013, she requested $20,000 in coverage for which no statement of health was required. It appears that a key stroke error in the coverage amounts was made ($500,000 instead of $20,000) and resulted in an incorrect premium deduction. Unfortunately, Providence was not advised of the error by Ms. Salyers. Providence has refunded Ms. Salyers the incorrect payroll deductions.

20.   In a letter dated July 15, 2014, Salyers appealed MetLife's determination.

-5-

21. On August 1, 2014, MetLife upheld its initial benefit determination:
> Providence Health Services initially submitted a Dependent Death claim to MetLife in the amount of $250,000 as a consequence of the death of Gary Wolk. According to the Plan provisions noted above, Evidence of Insurability (EOI) is required when electing Dependent Life coverage in amounts over $50,000. While researching whether an EOI was completed, it was determined that Ms. Salyers initially requested Dependent Life insurance in the amount of $20,000 on an enrollment form dated August l6, 2013. When Providence entered her enrollment into their system, it was incorrectly entered as $500,000, instead of the $20,000 which she elected. During a subsequent open enrollment, Ms. Salyers then requested to decrease the Dependent coverage to $250,000, to become effective January 1, 2014. Mr. Wolk passed away on January 10, 2014 and Providence submitted a claim for that amount. Our research indicated that Mr. Wolk never completed an EOI. Providence discovered their discrepancies, reimbursed Ms. Salyers for premiums she overpaid and submitted an amended Employer's Statement claiming a $30,000 Dependent death benefit. That was her initial election of $20,000 plus $10,000, not requiring EOI. That amount was paid to Ms. Salyers on February 14, 2014.

22. MetLife was unaware of Salyers' election of $$250,000 in supplemental life insurance coverage and that Providence was collecting and that plaintiff was paying premiums for $250,000 of supplemental life insurance coverage until Salyers' claim for benefits upon decedent's death.

-6-

23. MetLife did not waive its requirement for a statement of health for $250,000 of supplemental life insurance coverage.

24. There is no evidence that MetLife was aware that Salyers had selected $250,000 in supplemental life insurance coverage or that it computed Salyers' premiums. Providence was responsible for administering Salyers' policy and computing her premiums.

25. Providence was responsible for insuring that a statement of health or evidence of insurability accompanied Salyers' selection of coverage.

26. MetLife never received an individualized accounting of Salyers' selection of coverage or her individualized paid premiums amounts. The task of insuring that a statement of health or evidence of insurability accompanied Salyers' selection of supplemental life insurance coverage was Providence's responsibility.

27. MetLife received no information of which Providence employees were enrolled in coverage that required a statement of health or evidence of insurability. MetLife did not know and had no reason to know which Providence employees had selected coverage that required evidence of insurability or a statement of health.

28. MetLife had no reason to know that Salyers had selected life insurance coverage that required evidence of insurability or a statement of health until she submitted a claim for benefits.

29. Evidence of Insurability is a statement of health.

**II. Conclusions of Law**

1. The Plan at issue in this lawsuit is an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, et seq., which provides the exclusive remedy for Salyer's claims. See 29 U.S.C. § 1132(a)(1)(B).

2. The standard of review is *de novo*. When the standard of review is *de novo*, "[t]he court simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits, without reference to whether the

administrator operated under a conflict of interest." Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 963 (9th Cir. 2006). On de novo review, the court is to "evaluate the persuasiveness of conflicting testimony and decide which is more likely true." Kearney v. Standard Ins. Co., 175 F.3d 1084, 1095 (9th Cir.1999) (en banc). Further, the Court should make that determination based on the evidence in the Administrative Record. *Id.* at 1090-91.

3. In a de novo review, "the burden of proof is placed on the claimant" to establish entitlement to plan benefits. Muniz v. Amec Const. Mgmt., Inc., 623 F.3d 1290, 1294 (9th Cir. 2010).

4. ERISA requires that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument." 29 U.S.C.A. § 1102. ERISA fiduciaries must act "in accordance with the documents and instruments governing the plan," (US Airways, Inc. v. McCutchen, __ U.S. __, 133 S. Ct. 1537, 1548 (2013)), and must enforce the terms of the Plan as written (Heimeshoff v. Hartford Life & Accident Ins. Co., 134 S. Ct. 604, 611-12 (2013)).

5. Per the terms of the Providence Plan, for a participant or dependent to be eligible for more than $50,000 in supplemental life insurance coverage, evidence of insurability is required.

6. Because neither Decedent nor anyone acting on his behalf submitted evidence of insurability, under the terms of the Plan, Decedent was not eligible for more than $30,000 in supplemental life insurance coverage as of January 1, 2014.

7. No oral or material misrepresentation was made to Salyers regarding the terms of the Plan upon which Salyers reasonably and detrimentally relied.

8. The Plan provisions regarding the required evidence of insurability are not ambiguous.

9. MetLife is not estopped from asserting the Plan's evidence of insurability requirements for supplemental life insurance benefits. See Pisciotta v. Teledyne Indus., Inc., 91 F.3d 1326, 1331 (9th Cir. 1996); Greany v. Western Farm

Bureau Life Ins. Co., 973 F.2d 812, 822 (9th Cir. 1992) ("A plaintiff cannot avail himself of a federal ERISA estoppel claim based upon statements of a plan employee which would enlarge his rights against the plan beyond what he could recover under the unambiguous language of the plan itself.").

10.  MetLife did not waive the evidence of insurability requirements for supplemental life insurance benefits. Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1559 (9th Cir. 1991). MetLife did not act in a way that is "so inconsistent with an intent to enforce the [evidence of insurability requirement] right as to induce a reasonable belief that such right has been relinquished."

11.  MetLife's mere receipt of premiums erroneously deducted by Providence does not constitute a waiver of the Plan's evidence of insurability requirements. See Yale v. Sun Life Assur, Co. of Canada, 2013 WL 5923073 (E.D. Cal. Oct. 31, 2013); Affonso v. Metropolitan Life Ins. Co., 2012 WL 1496192 (N.D. Cal. April 26, 2012), aff'd, 580 F. App'x 581 (9th Cir. 2014).

12.  MetLife is not bound by Providence's administrative errors during the enrollment process or by its mistaken deduction of premiums based upon this administrative error.

13.  Because MetLife paid the entire $30,000 benefit due under the terms of the Plan, Salyers is not entitled to any additional life insurance benefits as a result of Decedent's death.

**III.  Analysis**

Plaintiff raises two theories supporting her entitlement to life insurance benefits in the amount of $250,000: estoppel and waiver. The Court concludes, after reviewing the Administrative Record, and considering the arguments and Trial Briefs submitted by the parties, that Plaintiff has not satisfied her burden to establish her entitlement to benefits in excess of those already paid. Specifically, the Court finds that MetLife is not estopped from contesting coverage based on the Plan's evidence

of insurability requirement and that MetLife did not waive its right to demand evidence of insurability.

**A.  Estoppel**

"In order to state a cause of action for equitable estoppel in an ERISA action, [a plaintiff] must allege [1] a material misrepresentation, [2] reasonable and detrimental reliance upon the representation, [3] extraordinary circumstances, [4] that the provisions of the plan at issue were ambiguous such that reasonable persons could disagree as to their meaning or effect, and finally, [5] that representations were made involving an oral interpretation of the plan." Spink v. Lockheed Corp., 125 F.3d 1257, 1262 (9th Cir. 1997).

Plaintiff argues that this case is analogous to Gaines v. Sargent Fletcher, Inc. Grp. Life Ins. Plan, 329 F.Supp.2d 1198 (C.D. Cal. 2004), in which the court held that defendants – plaintiff's employer and Hartford Life Insurance Company – were estopped from asserting that plaintiff "failed to provide evidence of his wife's good health" in connection with a life insurance plan. The plaintiff in Gaines purchased a $150,000 life insurance policy for his wife through a benefits plan offered by his employer. Id. at 1203. Plan documents noted that "Evidence of Good Health" was required under certain circumstances, but the court noted ambiguities. Id. at 1206. "Most significantly, the evidence of good health exclusion of coverage in this case requires the cross referencing of several provisions of the Plan, and once that is done, it is still not clear what, if anything, is actually required on the part of the applicant to evidence good health." Id. at 1217. Hartford had provided "personal health statement" forms to the plaintiff's employer, but the employer never passed the form on to the plaintiff. Id. at 1208-09. In fact, the employer's human resources manager testified that no employees "had been advised of the need to supply the information that [plaintiff] had failed to provide." Id. at 1203. Although Hartford received monthly lists of employee benefits, collected premiums from plaintiff for five months, and never advised plaintiff that his application was incomplete, it partially

denied plaintiff's claim on account of the missing evidence of good health. Id. at 1207. Applying elements of equitable estoppel that differ slightly from those stated above, the court held that defendants "knew, or are charged with knowledge of the relevant facts," that "acceptances of premium payments certainly qualify as representations upon which Plaintiff could rely," that plaintiff was ignorant of the relevant facts concerning the evidence of good health requirement, and that plaintiff relied to his detriment on the conduct of defendants in purchasing the coverage. Id. at 1223. In short, the case presented "the classic scenario for application of the equitable doctrine of estoppel." Id.

This case bears superficial similarities to Gaines, but is ultimately distinguishable. First, although the court in Gaines found that "deductions and acceptances of premium payments certainly qualify as representations upon which Plaintiff could rely," Id. at 1223, both the plan and the insurer were named defendants in that case. Here, Providence deducted the premiums and, by a mechanism not detailed in the Administrative Record, forwarded payments to MetLife. While there is no evidence that MetLife did not receive payment, neither is there any evidence that MetLife sent any receipt or acknowledgment of payment to Plaintiff. The Court therefore cannot find that MetLife made any representation to Plaintiff, much less a material misrepresentation. Representations made following Wolk's death did not induce reliance.

Second, the Plan documents in the instant case are not ambiguous. The Plan documents clearly dictate that "Evidence of Insurability is required for any amount elected over $50,000." (Plan 139.) The Plan documents also link the evidence of insurability document to the statement of health: "During your first enrollment as newly benefits eligible employee [sic], you may select any amount of spouse/Adult Benefit Recipient domestic partner coverage up to $50,000 without evidence of

. . . .

. . . .

insurability (statement of health)." (Plan 140.)[1/] Plaintiff attempts to read ambiguity into the Plan documents by suggesting that evidence of insurability "could simply mean that the person is below a certain age." (Resp. Br. at 2.) This reading is not plausible in light of the Plan's reference to the statement of health. In Gaines, by contrast, the court stressed that "the evidence of good health exclusion of coverage in this case requires the cross referencing of several provisions of the Plan, and once that is done, it is still not clear what, if anything, is actually required on the part of the applicant to evidence good health." 329 F. Supp. 2d at 1217. The court went on to emphasize the plan's use of conditional language – e.g., that certain documents "might" be required – and held that the plan was "susceptible to an interpretation that such information will not be demanded in every case, and that if it is needed, the plan participant will be notified by the insurer of precisely what he or she must provide as a condition to obtaining coverage." Id. Here, the Plan spells out precisely what the plan in Gaines did not: the required evidence of insurability is the statement of health, and such evidence is required for coverage in excess of $50,000.

Accordingly, because there is no ambiguity in the Plan documents such that reasonable persons could disagree as to their meaning or effect, MetLife is not estopped from asserting the evidence of insurability requirement.

**B.   Waiver**

The only affirmative argument for waiver that Plaintiff includes in her papers is a lengthy quotation from Gaines:

> Waiver is the voluntary or intentional relinquishment of a known right. . . . Generally speaking, waiver is unavailable when it would expand the scope of coverage under an ERISA plan. Here [employer] and [insurer] knew that Plaintiff (and indeed many others) had not submitted a personal health statement, knew of the coverage being

---

[1/]   The statement of health form was not included in the Administrative Record.

-12-

|   |   |
|---|---|
| 1 | purchased, knew that premiums were being paid for that |
| 2 | coverage, and received and accepted payments without |
| 3 | giving any indication that any . . . employees had failed to |
| 4 | comply with a precondition to obtaining insurance |
| 5 | coverage.  The Court finds that conduct sufficient to |
| 6 | constitute a voluntary relinquishment of the right to require |
| 7 | submission of a personal health statement.  Moreover, |
| 8 | giving effect to the waiver in this case does not expand the |
| 9 | scope of the ERISA plan; rather it provides the Plaintiff |
| 10 | with an available benefit for which he paid.  Thus, the Court |
| 11 | finds that application of the waiver doctrine is appropriate |
| 12 | under present circumstances. |

329 F. Supp. 2d at 1222.

Defendant argues that Hartford, the insurer in Gaines, simply knew more than MetLife knew here.  Hartford received a monthly employee list that "identified the employee, the type of coverage purchased, and the amount of monthly premium payments paid by the employee."  Id. at 1207.  There is no evidence in the record that MetLife received a similarly individualized breakdown of the relevant coverage and premium amounts.  Thus, although MetLife knew which employees had statements of health on file,[2] there is no evidence that it knew which employees were enrolled for coverage in an amount that required a statement of health.  The task of flagging policies for missing evidence of insurability was delegated to Providence.[3]

---

[2] See email from "Laura Howgate Sr. Statement of Health Specialist MetLife Statement of Health Unit" indicating that "[t]here is no SOH on file for [Wolk]."  (AR 010.)

[3] See adjuster's notes indicating that "[t]ypically if an employee wants to elect an amount that requires SOH[,] Providence would put the amount of life insurance at the max without SOH ($50k for spouse life), mark it as pending, wait for the SOH to be approved by MetLife and send a letter.  This was not done."  (AR 063.)  Plaintiff argues that MetLife's delegation of certain tasks does not insulate it from liability.  Citing Elfstrom v. New York Life Ins. Co., 67 Cal. 2d 503, 514 (1967), Plaintiff argues that Providence's knowledge that

-13-

Under these circumstances, the Court cannot find that MetLife voluntarily or intentionally relinquished its right to demand evidence of insurability for a $250,000 policy. See, e.g., Yale v. Sun Life Assur. Co. of Canada, No. 1:12–cv–01429–AWI–SAB, 2013 WL 5923073, at *11 (E.D. Cal. Oct. 31, 2013) (holding that plaintiff had failed to establish waiver of evidence of insurability requirement for $250,000 in coverage because insurer was "unaware that no EOI had ever been submitted with [plaintiff's] enrollment form until it began to process [her] claim for benefits" and because "nothing suggests [insurer's] billing department was aware that [plaintiff] had selected a level of coverage in excess of [the] guaranteed issue amount, and was therefore required to submit EOI, when it computed her premiums"); Colardo v. Metropolitan Life Ins. Co., No. 8:10–cv–1615–T–30TBM, 2011 WL 1899253, at *8 (M.D. Fla. Mar. 16, 2011) ("[T]he record evidence, such as it is, indicates that MetLife was unaware of both [plaintiff's] election of Optional Life Insurance and the fact that [employer] was collecting and paying premiums on her elections until it undertook to address the beneficiaries' claim for such benefits upon her death. Undoubtedly, the collection of premiums in these circumstances was unjust to [plaintiff], and as noted above, Defendants' neglect regrettable. However, absent some additional showing that MetLife acted knowingly and intentionally to allow for coverage regardless of the requirements for evidence of insurability, the waiver argument must fail.").

---

"Plaintiff applied for, paid for, and was told that she had $250,000 in dependent life coverage for her husband" must be imputed to MetLife. (Op. Br. at 12-13.) As MetLife observes, the Supreme Court has held that the "Elfstrom rule" deeming an employer to be the agent of the insurance company in administering group policies is preempted by ERISA. See Unum Life Ins. Co. of America v. Ward, 526 U.S. 358, 378, 119 S. Ct. 1380, 1391-92 (1999). Although Plaintiff cites non-binding authority for the revival of an Elfstrom-style rule under the federal common law, see, e.g., Thrall v. Prudential Ins. Co. of America, No. 3:05-CV-00067-RAM, 2008 WL 5156344 at *4 (D. Nev. Dec. 5, 2008), the Court notes that "federal courts disfavor creating federal common law absent specific Congressional authorization," Id. at *2, and the lack of any authority specific to the waiver context. The Court declines to create a rule imputing Providence's knowledge to MetLife for purposes of waiver.

**Conclusion**

For all of the foregoing reasons, the Court concludes that Plaintiff has not sustained her burden of establishing an entitlement to Plan benefits. Accordingly, Plaintiff is not entitled to benefits in excess of those already paid. The Court will enter judgment in favor of Defendant.

DATED: August 14, 2015

_____
Percy Anderson
UNITED STATES DISTRICT JUDGE